NATIONAL SURETY COMPANY, RESPONDENT, v. AGNES K. MULLIGAN, APPELLANT.

Submitted October 26, 1928—Decided May 20, 1929.

For the appellant, *William F. Burke* and *John W. Ockford.*

For the respondent, *Eichmann & Seiden.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. This is an appeal from a judgment of the Supreme Court entered upon striking out defendant's answer. The plaintiff moved to strike it out "on the ground that said answer is false, sham and frivolous and interposed solely for the purpose of delay."

A plea cannot be both sham *and* frivolous. It is either sham *or* frivolous. A sham plea is one good on its face but false in fact; a frivolous plea is one which on its face sets up no defense, although it may be true in fact. *In re Beam,* 93 *N. J. Eq.* 593; *Fidelity, &c., Co.* v. *Wilkes-Barre, &c., Co.,* 98 *N. J. L.* 507; *Milberg* v. *Keuthe,* 98 *Id.* 779; *Sculthorpe* v. *Commonwealth Cas. Co.,* 98 *Id.* 845, 847.

The order striking out the answer recited that "the defendant's (Agnes K. Mulligan's) answer is sham and frivolous and interposed solely for the purpose of delay and fails to show such facts as entitle her to defend." Now, in *Fidelity, &c., Co.,* v. *Wilkes-Barre, &c., Co.,* 98 *N. J. L.* 507 (at *p.* 510), it was held that a plea might be condemned as either false (sham) or frivolous, and could be struck out upon either ground, but was never summarily dealt with upon both grounds. However, the Supreme Court commissioner's order recites that the answer fails to show such facts as entitle Agnes K. Mulligan to defend, and this is so; and therefore the order will be treated as striking out the answer as frivolous (*Wittemann* v. *Giele,* 99 *Id.* 478), especially as no ground of appeal challenges it for the reason that the answer was struck out as both, when it should have been on one or the other head. Besides, no judgment shall be reversed or new trial granted for error of procedure, unless after examination of the whole case it shall appear that the error injuriously affected the substantial rights of a party. *The Practice act* (1912), *Pamph. L., p.* 377, § 27. The essential thing was striking out the answer, not that it was so done for such and such a reason.

It is true that a Supreme Court commissioner designated to determine motions preliminary to trial has no power to make an order for summary judgment in that court (*Milberg* v. *Keuthe,* 98 *N. J. L.* 779), but, Supreme Court rule 84, pro-

vides that such judgment may be entered by the court or a judge at chambers. The procedure adopted in this case was regular. Here the commissioner made an order striking out the answer, and then the clerk of the court made an assessment of the damages and the chief justice signed the judgment filed and entered in that tribunal.

Defendant-appellant claims that she is entitled to have the facts set up in her answer tried by a jury. She has no such right. In *Eiesle & King* v. *Raphael*, 90 *N. J. L.* 219, this court said (at *p* 223) : "Striking out a sham or frivolous plea, is not an infringement of the right of trial by jury." See, also, *Wittemann* v. *Giele*, 99 *Id.* 478.

The plaintiff sought to recover the amount alleged to be due on a decree or judgment obtained by Mary K. Hartman against Agnes K. Mulligan, for the sum of $18,997.46 in the Surrogate's Court in and for the county and State of New York, which decree or judgment was assigned in writing by Mary K. Hartman to the National Surety Company, the party plaintiff in the suit below.

The answer filed by the defendant admitted the recovery of the decree above mentioned by Mary K. Hartman, and also admitted that it was duly assigned to the plaintiff, National Surety Company, but set up these defenses: First, that the moneys alleged to be due under said decree had been paid; second, that the plaintiff became surety on an appeal bond of the defendant, Agnes K. Mulligan, whereby she appealed the above mentioned decree to the appellate division of the Supreme Court of the State of New York; third, that at the time the appeal bond was executed by the plaintiff as surety for the defendant, the latter entered into an agreement with plaintiff to indemnify it from loss on the appeal bond and deposited with the plaintiff as collateral security for the indemnity agreement, three bonds and mortgages, which were, March 31st, 1915, applied by the plaintiff in satisfaction and payment of the amount due on the above mentioned decree against the defendant, Agnes K. Mulligan; fourth, that on March 31st, 1915, the plaintiff, National Surety Company, pretended to sell the above mentioned three bonds and mortgages under a pretended auction sale to itself for $3,000, but

that the pretended sale was held without notice to the defendant herein and while the appeal for which the National Surety Company had become surety was still pending, and before any liability of the plaintiff on its undertaking on appeal had been determined, and that said pretended sale was for the purpose of defrauding said defendant, Agnes K. Mulligan, and, further, that the plaintiff applied the amount of the mortgages in payment and satisfaction of the amount due under the decree.

It was unnecessary to notify defendant of such sale: she was not the owner of the mortgages nor had she pledged them, although she answered that she had. Her affidavit flatly contradicts her answer. She swears that McGuire owned and pledged the mortgages. The liability of defendant had been adjudged in the Surrogate's Court of New York, and it was unreversed. It cannot be said that the sale was for the purpose of defrauding Mulligan.

The assignment by Catherine A. McGuire to the National Surety Company was for indemnity against loss to the company for having entered into the appeal bond for Agnes K. Mulligan. The bonds were sold at public auction, after advertisement, for $3,000, plus $50 costs, there being no bidder, which sum ($3,050) was applied in reduction of the amount due on the decree. The National Surety Company thus became the absolute owner of the bonds and mortgages, and their subsequent foreclosure of the latter and buying in the property is a matter between the pledgor, Catherine A. McGuire, and the pledgee, National Surety Company. And this suit was for the balance due upon the New York decree, namely, $17,391.50, with interest.

It is not pretended that Agnes K. Mulligan, the defendant in the suit, ever paid the Surety company anything whatever on account of the decree or judgment, and she still owes the whole and every part thereof. The defendant Mulligan assumes the attitude of being subrogated to the rights of McGuire, with authority to urge defenses which belong alone to the latter, none of which she has put forth in any attack upon the National Surety Company for the more than twelve

years which elapsed between the sale of the securities and the commencement of this suit; and it is not perceived how Mulligan is entitled to raise them here.

Defendant-appellant urges that a decree of the surrogate's court is not a definite, final and unconditional judgment capable of enforcement by final process, and is not the kind of foreign judgment that can be the basis of suit in the courts of another state, but says in her brief: "A judicial settlement of an executor's account is not a final determination of anything except the matters embraced within the account." If that be conceded, it is all that is necessary to entitle the person holding the decree to recover the money adjudged by it in the state where the decree was made, or by suit on the decree or judgment in a court of another state. This point has been expressly ruled in New Jersey, and, therefore, the answer of the defendant in that regard is of no effect. See *Bennett* v. *Bennett, 63 N. J. Eq.* 306, wherein this court, at *page* 308, held: "The effect of a judgment or decree recovered in one state when certified to another state, under the act of congress and the above stated clause of the constitution of the United States, is to furnish an indisputable proof of the amount due, where both the parties were properly before the court, but does not authorize a judge or chancellor to proceed upon such decree or judgment until recovery shall have been had thereon in the court of the state to which the same had been transferred."

The constitution of the United States requires "that full faith and credit be given in each state to the public acts, records and judicial proceedings of every other state." *Const. U. S., Art. IV,* § 1. The only defenses that can be made to a judgment obtained in another state, when sued upon here, are that the court of our sister state did not have jurisdiction of the person or of the subject-matter; that it was fraudulently procured, or had been paid. *Smith* v. *Swart,* 103 *N. J. L.* 150 (at *p.* 152). See, also, *Walter* v. *Keuthe,* 98 *Id.* 823, 828.

In her answer in this cause Agnes K. Mulligan admits that on November 29th, 1913, Mary K. Hartman procured the

decree against her as alleged in the complaint, but denies that the Surrogate's Court in and for the county of New York is a court of record and of general jurisdiction. The distinction between courts of record and those not of record does not show that the finding of a court not of record may not be sued on, proved and recovered upon when it fixes a debt, the same as in case of other evidence of indebtedness; but, the question not being argued might be considered abandoned, and need not be decided. However, in 34 *C. J.* 1154, it is stated that although many of the earlier cases held that the judgment rendered by a justice of the peace and other inferior courts in another state was not conclusive on the merits, but at most only *prima facie* evidence of debt, it is now generally settled that such a judgment, when properly proved and when jurisdiction is shown to have existed, is entitled to "full faith and credit" in other states and is as conclusive as a judgment of a court of record. In *Godfrey* v. *Meyers,* 23 *N. J. L.* 197, it was held that a suit cannot be maintained in this state upon a judgment by an alderman or justice of the peace of another state, without *proof* of the jurisdiction of such court by showing the statute which created it; that the jurisdiction of such court cannot be presumed but must be proved. These requirements are supplied in the case at bar, as appears from the transcript of the record of the proceedings in the Surrogate's Court, which are fully set out, and its statutory jurisdiction has been proved.

It thus clearly appears that the judgment of an inferior court of a sister state may be sued on here, but to entitle the plaintiff to recover, the jurisdiction of the foreign court must be shown and the cognizance of that court over both the defendant and the subject-matter must also be made to appear, all of which has been proved in this case. So, treating the decree sued on as that of an inferior court, as defendant-appellant in this case claims it is, still, plaintiff, by the proofs and admitted facts is entitled to recover. That its jurisdiction is general within the powers conferred upon it abundantly appears by § 40 of an act known as "The Surrogate's Court act," of New York, introduced in evidence on the motion

to strike. Under the caption "General jurisdiction of the Surrogate's Court," devolving power and duties upon that court, is the following, among other provisions:

"To enforce justice in all matters relating to the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, or between any party and any other person having any claim or interest therein who voluntarily appears in such proceeding, or is brought in by supplemental citation, as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"To enforce the payment of debts and legacies; the distribution of the estates of decedents; and the payment or delivery, by executors, administrators, and testamentary trustees, of money or other property in their possession, belonging to the estate or fund."

And there is no practical difference, where the final determination of a court orders the payment of money, between a decree of a court of equity or a judgment of a court of law.

"A decree is a judicial decision of a litigated cause by a court of equity. It is also applied to the determination of a cause in courts of admiralty and probate. It is accurate to use the word judgment as applied to courts of law and decree to courts of equity, although the former term is now used in a larger sense to include both." *Bouv. Law Dic.* (*Rawle's 3d rev.*), *Vol.* 1, *p.* 802. See, also, *Hudson Trust* v. *Boyd,* 80 *N. J. Eq.* 267, 273; *Hazen* v. *Durling,* 2 *Id.* 133; *Bennett* v. *Bennett,* 63 *Id.* 306, 308.

In her affidavit submitted on the motion, Agnes K. Mulligan says: "It became incumbent upon me to either pay the amount of the decree or appeal." She chose the latter, and she not only appealed to the appellate division of the supreme court, but from that tribunal to the court of appeals of the State of New York. The appellate division affirmed the decree

of the Surrogate's Court, and the Court of Appeals affirmed the judgment of the appellate division.

It makes no difference that the assignment from Mary K. Hartman to the National Surety Company was made pending the appeal from the appellate division to the court of appeals of New York; at least not on its face, and if there were any defense in that regard it could have been made, but was not; the suit here might have been stayed, but no application for that purpose appears to have been made.

Agnes K. Mulligan in her affidavit further says: "At the time the plaintiff [National Surety Company] entered into the bond or undertaking on appeal, one Catherine A. McGuire deposited with the plaintiff for me, at my request, the three bonds and mortgages * * * to secure the plaintiff from any loss it might sustain should it be compelled to pay the decree appealed from." These bonds and mortgages were assigned to plaintiff by Catherine A. McGuire by absolute assignment. She further says in her affidavit: "Out of the proceeds of the sale of the properties covered by said mortgages it (The National Surety Company) should reimburse itself for the moneys so paid by it and return the overplus to the said Catherine A. McGuire."

Catherine A. McGuire, by assigning the mortgages to the National Surety Company as indemnity, became pledgor and the company became pledgee, McGuire retaining a general property in the mortgages pledged, the plaintiff having a special property therein. Mr. Justice Trenchard, speaking for the Court of Errors and Appeals in *Security Co.* v. *Edwards*, 90 *N. J. L.* 558 (at *p.* 561), quoted this statement from Chief Justice Holt: "A pawn never conveys the general property to the pawnee, but only a special property in the thing pawned; and the effect of a default in payment of the debt by the pawnor is, not to vest the entire property of the thing pledged in the pawnee, but to give him a power to dispose of it, accounting for the surplus, which power, if he neglected to use the general property of the thing pawned, continues in the pawnor, who has a right at any time to redeem it." See, also, the various cases cited in the opinion mentioned.

In the case at bar the pawnee disposed of the assigned mortgages at public sale upon advertisement, without any legal attempt to prevent the sale, and there was no surplus to account for.

The National Surety Company in its brief conceded that if it has improperly disposed of the mortgages that Catherine A. McGuire would have her remedy against it by way of trover and conversion, or accounting in equity, but that the defendant, Agnes K. Mulligan, cannot for her own benefit interpose a defense urging the right of Catherine A. McGuire (which, by the way, she does not urge for herself). And this is so.

The views above expressed dispose of all the contentions made upon the argument, and lead to an affirmance of the judgment under review.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 13.

*For reversal*—None.