DIAMOND T MOTOR CAR COMPANY, INCORPORATED, PLAINTIFF, v. LOUIS A. EUCKER, JR., TRADING AS EUCKER MOTOR AND REPAIR COMPANY, DEFENDANT.

Decided April 23, 1932.

For the plaintiff, *David H. Stemer.*

For the defendant, *Nicholas S. Schloeder.*

ACKERSON, S. C. C. This action is upon a written guaranty. The complaint alleges in substance the sale of a certain "Diamond T" motor truck by the defendant, to the Tri-County Carrier Company, under a conditional sale agreement reserving title in the seller and providing for payment of the balance of the purchase price in monthly installments secured by notes with acceleration of payments in case of any default. It is further alleged that at the time of said sale on October 29th, 1928, the defendant assigned said conditional sale agreement and guaranteed the payments due in accordance therewith to the Diamond T Motor Car Company, Incorporated, the plaintiff herein, which guaranty is made a part of the complaint and reads as follows:

"For value received the undersigned hereby sells, assigns and transfer to Diamond T Motor Car Company, 81 Williams

street, Long Island City, New York, all of the right, title and interest of the undersigned, in to and under lease agreement made this date with the undersigned by Tri-County Carrier, Incorporated, 726 East Twenty-sixth street, Paterson, New Jersey, covering Diamond T motor truck 80063024, including the notes therein referred to and thereby secured and including the property therein described, together with all of the rights of the undersigned with respect to the enforcement thereof and of said notes and with respect to said property, and the undersigned guarantees to Diamond T Motor Car Company full performance of said *instrument and the prompt payment of said notes and warrants* that the property therein described is free and clear of any and every claim of any kind whatsoever, other than this instrument. Should any deficiency result to Diamond T Motor Car Company with respect to the amount due on said notes upon enforcement of said rights *as to said property,* the undersigned agrees to pay Diamond T Motor Car Company such deficiency, together with such reasonable expenses and attorney's fees involved in said enforcement or rights of *said property,* and further agrees that any etxension or forebearance which may be granted with respect to the said instrument or said notes shall not in any manner release the undersigned from the endorsement of this guaranty.

"EUCKER MOTOR AND REPAIR CO.
(Signed) EDWARD EUCKER, *Sec."*

The complaint further alleges a default in the monthly payments, repossession of the truck by plaintiff, and sale thereof at public auction at 81 Williams street, Long Island City, New York, on June 21st, 1929, in accordance with the "Conditional Sales act" (*Pamph. L.* 1919, *ch.* 210, *p.* 468), for the sum of $1,000 resulting in a deficiency, &c., for which judgment is asked against the defendant as guarantor.

The body of the answer, filed by the defendant, consists of certain admissions and denials, to which is appended eight separate defenses and a counter-claim. The plaintiff now moves to strike out the body of the answer as sham or frivolous and the separate defenses and counter-claim as frivolous.

First turning our attention to the separate defenses, we find that the first alleges that:

"The said plaintiff failed to make diligent effort to enforce the collection of the obligation from the *said principal debtor,* the *Tri-County Carrier Company,* mentioned in the complaint and has wholly failed and unreasonably neglected to proceed *against* it."

This action is to recover from the defendant, guarantor, the deficiency alleged to have resulted from the sale of the truck in question, and the pertinent provisions of the written guaranty are as follows:

"Should any deficiency result to Diamond T. Motor Car Company, with respect to the amount due on said notes upon enforcement of said rights as to said *property* the undersigned" (defendant), "agrees to pay Diamond T Motor Car Company such deficiency, together with such reasonable expenses and attorney's fees involved in said enforcement or *rights of said property,* and further agrees that any extension or forebearance which may be granted with respect to the said instrument or said notes shall not in a manner release the undersigned from the endorsement of said guaranty."

This is not the ordinary guaranty of collection, requiring the exhaustion of all remedies for satisfaction of the debt before recourse to the guarantor. It is rather a limited guaranty of collection confining the guarantee's efforts to collect, before calling upon the guarantor, to the exhaustion of the remedies specifically set forth in the guaranty itself. The plain wording of the guaranty in question, so far as applicable to the present form of action, requires the seller or his assigns to establish a "deficiency" by first enforcing his rights against the *"property,"* and upon this being done the guarantor's obligation became an absolute guaranty of payment. 28 *C. J.* 978, *note* 6, and cases cited; *McMurray* v. *Noyes,* 72 *N. Y.* 523; 28 *Am. Rep.* 180.

It is to be noted that the defense in question does not allege a failure to give notice to the defendant of the default in making the installment payments, but rests entirely upon the proposition that the plaintiff has failed to make diligent effort

to enforce collection of the obligation from the *principal debtor* and in fact has not proceeded against it at all, but this the plaintiff was not required to do, after establishing a deficiency by selling the truck as required by the terms of the guaranty. We must keep in mind that this defense as pleaded, does not allege a failure to make diligent efforts to determine the deficiency by proper sale of the truck, but only such failure with respect to proceeding against the principal debtor. The first defense is, therefore, frivolous and will be stricken out.

The "second defense" is as follows:

"The said plaintiff failed to comply with the Conditional Sales act mentioned in the complaint of the plaintiff in that:

(a) It failed to give ten days' written notice to the defendant or to the buyer, the Tri-County Carrier Company, of the sale.

(b) It failed to give notice of sale by posting at least three notices in different public places within the filing district where the motor truck was to be sold, at least five days before the sale.

(c) It failed to give notice of said sale at least five days before the sale by publication in a newspaper published or having a general circulation within the filing district where the motor truck was to be sold, although more than $500 had peen paid on the purchase price.

(d) The plaintiff failed to give notice of intention to retake the motor truck which was· the subject of the said conditional sale."

The only reason urged for striking out this defense is that it is frivolous. The various subdivisions of this defense are, as will be observed, predicated upon the alleged failure of the plaintiff to comply with certain provisions of the said "Conditional Sales act" in selling the truck to establish the alleged deficiency for which this action is brought. Plaintiff claims that it established such deficiency in accordance with the requirements of said act, as it was required to do in order to hold the defendant to this provision of his guaranty. Subdivisions (a), (b) and (c) of this defense set forth failure

to give certain notices of the sale of the truck as required by the act. If true they present good defenses, and are not, therefore, frivolous, under the definition of that term found in *National Surety Co.* v. *Mulligan,* 105 *N. J. L.* 336; 146 *Atl. Rep.* 372, and cannot be stricken out upon that ground. Even if we look to the truth of these allegations a question is raised by the affidavits as to whether the sale was actually held on the day claimed by the plaintiff, and if the sale was not so held, any notice given for a day when the sale was not held would be ineffective. So the first three subdivisions of this defense could not be stricken out as sham if that had been stated as a ground of the motion.

With regard to subdivision (d), however, it is sufficient to say that no notice of the seller's intention to retake the motor truck is required under section 18 of the "Conditional Sales act," if the seller retains the goods for ten days after the retaking before proceeding to sell them. This subdivision of the defense in question is, therefore, defective for failure to also allege that the truck was not retained for ten days after the retaking and will be stricken out as frivolous.

The "third defense" is stated as follows:

"1. The said motor truck was delivered to the defendant *and* for the purpose of resale upon a warranty from the plaintiff that the said motor truck was free from all defects in material and workmanship.

"2. Relying upon said warranty, the defendant sold said truck to the Tri-County Carrier under the conditional sales agreement mentioned in complaint.

"3. The said warranty was breached in that the said truck was defective in materials and workmanship and as a result thereof, the said conditional vendee was excused from completing its contract of purchase."

This defense is objected to as frivolous. It is difficult from its wording to determine whether the defendant intends to rely upon a discharge of the conditional vendee, Tri-County Carrier Company, because of an alleged breach of warranty made by plaintiff to said conditional vendee, thereby relieving the defendant from his guaranty, or whether the defend-

ant intends to rely upon an alleged breach of warranty made to himself as an offset to the plaintiff's claim upon the guaranty.

If the first proposition is relied upon the pleading is defective on its face in that it does not allege that any warranty, express or implied, was made by anyone to the Tri-County Carrier Company. The warranty referred to appears from the averments to have been made to the defendant, because the allegation is that "the truck was delivered to the defendant for the purpose of *resale upon* a warranty from the plaintiff," &c., thereby implying that the truck was *sold* to the defendant, upon a warranty to him as otherwise there could be no *resale* by him, and it is not alleged that he was acting merely as an agent. Then it is alleged that, "relying upon said warranty, the *defendant* sold said truck to Tri-County Carrier Company." It is not charged that the warranty was a general one to anybody who might thereafter purchase the truck from the defendant or his vendee, or that it was made to or for the benefit of Tri-County Carrier Company, nor that said company relied thereon. A warranty on the sale of personality does not run with the property. Thus, purchasers who buy from the vendee in a prior sales contract with warranties are not accorded the benefit of such warranties to their vendors, and this has been held although the original sale was to one dealing in goods of the character sold; the rights and remedies in such prior sale belong to, and are enforceable by, the intermediate parties in the claim of title against their immediate vendors. 55 *C. J.* 666.

Furthermore the statement following the alleged breach of warranty at the end of the defense, that "as a result thereof, the said conditional vendee was excused from completing its contract of purchase," is a mere conclusion of the pleader and cannot be considered in determining the legal sufficiency of the pleading. In any event it is not charged that said conditional vendee rescinded the contract of sale, nor that it ever claimed to have been damaged by any breach of warranty, nor that it refused to complete its contract of purchase because of any breach of warranty. In this aspect of this

defense, the defendant would be claiming a third party right which such party never asserted so far as appears from this pleading.

If, one the other hand, the defendant intends to rely upon an alleged breach of warranty made to himself alone as an offset against the plaintiff's claim, he has chosen the wrong method of pleading.

It is, of course, true that the buyer of goods has a right of action for a breach of warranty notwithstanding a resale of the goods. 55 *C. J.* 889, § 867 ; also *pp.* 803, 818.

It would seem, therefore, that if the plaintiff breached a warranty given to the defendant, the latter would have a right of action for such breach against the plaintiff, but this would arise from a separate, distinct and independent cause of action from that set up in the case *sub judice,* and would not be a defense thereto, although it might probably be the proper subject of a counter-claim under section 12 of the Practice act of 1912 (*Pamph. L.* 1912, *p.* 379, § 12) ; see, also, *Kinney* v. *Federal Laundry Co.,* 75 *N. J. L.* 497 ; 68 *Atl. Rep.* 111; 9 *Cyc.* 643. This section of the 1912 act supersedes section 105 of the Practice act of 1903. *Pamph. L.* 1903, *p.* 568 ; *Murphy* v. *Patten,* 85 *Atl. Rep.* 56.

It would seem, therefore, that this pleading, in its present form, does not set forth a legal defense to plaintiff's action and must be stricken out.

The "fourth defense" is in the following form :

"1. The said motor truck, about sixty days prior to June 21st, 1929, came into the possession of the plaintiff seller by virtue of the said plaintiff's agreement with buyer to repair the truck, arising out of the defective materials and workmanship and its agreement to substitute new parts, said truck being so held in possession at its factory branch at 81 Williams street, Long Island City, New York.

"2. At the time of the alleged sale of the said truck under the pretended authority of the said Conditional Sales act on June 21st, 1929, the said truck was in the possession of the said seller for the purpose set forth in the preceding paragraph."

It is difficult to gather from the first reading of this defense the principle upon which it is attempted to be rested. The mere circumstances that the truck was in the possession of the seller or his assignee for repairs at the time of an alleged breach of the Conditional Sales agreement by failure to pay installments, would not deprive such party of his right of retaking the truck. It might be necessary to serve notice that the truck had been retaken in order to properly fix the ten-day period of detention before sale required by section 18 of the "Conditional Sales act," but there is no allegation of a failure so to do.

The real purpose of this defense becomes manifest when we read defendant's brief, for there we learn that the contention of the plaintiff is that certain repairs were made to the truck by the plaintiff for which a charge of $126.10 was made, and when this was not paid by the conditional vendee, Tri-County Carrier Company, the plaintiff, refused to deliver up the truck until the bill was paid, and that plaintiff, therefore, claimed a lien upon the truck which destroyed the plaintiff's right to retake the truck under the conditional sales agreement by virtue of section 24 of the "Conditional Sales act" which provides *inter alia* as follows:

"But such right of retaking shall not be exercised by the seller after he has collected the entire price or after he has claimed a lien upon the goods or attached them, or levied upon them as the goods of the buyer."

The difficulty with this contention is that the criticised defense does not set forth any such claim. There is no allegation that any charge was made for the repairs, nor that the truck was being held for any repair bill whatever. Nothing is alleged to show that the truck was being held under any lien at the time stated. This defense is, therefore, clearly frivolous and will be stricken out for that reason.

The "fifth defense" is stated as follows:

"1. The plaintiff by taking possession of the motor truck, and selling the same under the conditions set forth in the previous defense, retained the said motor truck as its own

property and thereby discharged the purchaser, Tri-County Carrier Company, and this defendant from all obligations."

What has just been said regarding the fourth defense is applicable here. There is no allegation that the truck was being held under a lien for a repair bill at the time it was sold under the conditional sales agreement. This defense will also be stricken out as frivolous.

The "sixth defense" states that:

"The filing district under the provisions of the Conditional Sales act in respect to the sale of the motor truck which is the subject-matter of this suit, is the county of Passaic, in the State of New Jersey, and none of the acts required under said Uniform Conditional Sales act respecting sale of said motor truck were done and performed in said filing district."

The plaintiff moves to strike out this defense on the sole ground that it is frivolous. A frivolous plea is one which on its face sets up no defense, although it may be true in fact. *National Surety Co.* v. *Mulligan, supra.* There is no allegation in the complaint to show where the motor truck in question was retaken, although it is alleged that the truck was sold in the State of New York. Since the place of retaking is an important element in determining the question raised by this defense, as will hereafter appear, it is apparent that the pleading cannot be attacked as frivolous although it may be untrue in fact.

The affidavits submitted with this motion, however, disclose that a very interesting question will arise under this defense at the trial, which it may be well to examine here to pave the way for its disposal at that time.

The defendant contends that in the case of goods retaken in another state all notices of sale required to be posted and advertised must be posted and advertised in the filing district where the conditional bill of sale is filed and not at the place where the goods were actually retaken.

Section 19 of the "Conditional Sales act" provides *inter alia* as follows:

"If the buyer does not redeem the goods within ten days after the seller has retaken possession, and the buyer has paid

at least fifty per centum of the purchase price at the time of the retaking, *the seller shall sell them at public auction in the state where they were at the time of the retaking,* such sale to be held not more than thirty days after the retaking. The seller shall give to the buyer not less than ten days' written notice of the sale, either personally or by registered mail, directed to the buyer at his last known place of business or residence. The seller shall also give notice of the sale by at least three notices posted in different public places *within the filing district where the goods are to be sold,* at least five days before the sale. If at the time of the retaking five hundred dollars or more has been paid on the purchase price, the seller shall also give notice of the sale at least five days before the sale by publication in a newspaper published or having a general circulation within the filing district where the goods are to be sold."

A filing district is defined in section 1 of the same act as follows:

"Filing district" means the subdivision of the state in which conditional sale contracts, or copies thereof, are required by this act to be filed."

Conditional sales contracts, or copies thereof, are required by section 6 of the act to be filed as follows:

"The conditional sale contract or copy shall be filed in the office of the county clerk, or where there is a register of deeds in the office of such register of deeds in the county in which the goods are first kept for use by the buyer after the sale."

Section 14 of the act provides *inter alia* as follows:

"When, prior to the performance of the condition, the goods are removed by the buyer from a filing district in this state to another filing district in this state in which such contract or a copy thereof is not filed, or are removed from another state into a filing district in this state where such contract or copy is not filed, the reservation of the property in the seller shall be void as to purchasers and creditors described in section five, unless the conditional sale contract or a copy thereof shall be filed in the filing district to which the goods are removed, within ten days after the seller has received notice of the filing district to which the goods have been removed."

The intention of the legislature to be gathered from the foregoing excerpts from the act is that goods, if retaken in another state, are not to be brought back to this state for sale, but are to be sold in the state where retaken.

What is meant by requiring the notices and advertisement of the sale to be posted and published "within the *filing district* where the goods are to be *sold*" is not quite so clear at first reading, when we see that no definition of or provision for a "filing district" outside of this state is specifically set forth in the act. If it means that the notices must be posted and published in the filing district where the contract of conditional sale is filed, then what purpose is served by the words "where the goods are to be sold" at the end of the clause just quoted?

Two purposes are served by requiring due notice to be given of the sale. One is to appraise the conditional vendee thereof in order that he may properly protect his interest. The other is to procure a good price by informing prospective bidders. The former purpose is accomplished by compliance with section 19 of the act which requires that "the seller shall give to the buyer not less than ten days' written notice of the sale, either personally or by registered mail." The other purpose of bringing in bidders is accomplished by the notices of sale required to be posted in public places and advertised in a newspaper. Keeping these different purposes in mind, it will readily be seen that if a truck is taken from a filing district in New Jersey into the State of California, and notice of a sale in that state as required by our act is served upon the buyer either personally or by registered mail, he is put in a position to protect his interest, but if notice to the public is required to be posted and published in the filing district in New Jersey where the contract of conditional sale is filed, it probably would not be productive of many bidders at the sale in California. The statute in question is a uniform act adopted by many states for the purpose of making the law respecting conditional sales uniform throughout the country, and the definition of a filing district, and the requirement for filing the sales contract in such district were incorporated

in the act with this thought in mind, and so we find that in defining such a district the specification is not confined to this state, but reads: "Filing district means the subdivision of *the* state" (not *this* state) "in which conditional sale contracts or copies thereof, are required by this act to be filed." And as noted above they are required to be filed in the first instance in the appropriate office "in the county in which the goods are first kept for use by the buyer after the sale." This does not specify a county in this state, but is applicable to any state, as otherwise there would be no protection in case the goods are sold here for use in another state.

Undoubtedly the acts required to be done by our "Conditional Sales act," "within the filing district where the goods are to be sold," are to be done when the goods are retaken in another state, within the county of such state where so retaken. As already observed, however, this sixth defense cannot be stricken out as frivolous.

The "seventh defense" is stated as follows:

"1. At the said sale held on June 21st, 1929, mentioned in the complaint, the said plaintiff purchased said motor truck for $1,000.

"2. Thereafter plaintiff agreed to redeliver truck to the defendant upon defendant assuming the payments still due on truck.

"3. Thereafter plaintiff claiming that said truck was resold by mistake, agreed with defendant to credit the said difference between $2,400 and $1,000, or the sum of $1,400, to any claims that it would make in respect to the account for the deficiency, if any were due.

"4. By reason thereof, the said defendant is entitled to the sum of $1,400 in reduction of extinguishment of the said plaintiff's claim."

Of course, the rule is that doing or promising to do what one is already legally bound to do, is no consideration for a contract. The rule is grounded upon the reason that the promisor gets no more in return for his promise than the promisee was already bound to give, and, therefore, receives no consideration. But it is equally true that the doing or

undertaking of anything beyond what one is already bound to do, though of the same kind and in the same transaction, is a good consideration. *Marten* v. *Brown,* 80 *N. J. L.* 143; 76 *Atl. Rep.* 1009.

In the instant case the plaintiff having seized the truck and sold it on account of the unpaid purchase price, could only look to the defendant for the deficiency resulting from such sale. If the seventh defense means that the defendant agreed to assume the payment of all installments not met by the conditional vendee of the truck, without crediting the $1,000 received at the public sale, and this may be assumed for the purpose of this motion, inasmuch as the truck was to be turned over to the defendant, then the defendant engaged to do something beyond what he was required to do, for he was only answerable for the deficiency resulting after applying the proceeds of the public sale to the unpaid balance of the purchase price. There would, therefore, be a sufficient consideration for this new agreement. If afterward the plaintiff failed to deliver the truck to the defendant it was open for them to compromise by the further agreement to allow defendant a credit of $1,400 on account of the plaintiff's *present claim* against the defendant upon the guaranty.

I consider this defense as equivalent to a plea of payment *pro tanto,* and for that reason a proper subject of defense to that extent, rather than a counter-claim. This becomes more evident when we consider that the allegation is that the "plaintiff agreed with defendant to *credit* the said difference between $2,400 and $1,000, or the sum of $1,400 to *any claims* that it would make in respect to the account for the *deficiency,* if any were due." The $1,400 is not to be paid to the defendant, but only credited against any deficiency for which the defendant would be liable under his guaranty. It would be available as payment *pro tanto,* but not give the defendant the right to collect the amount from the plaintiff.

It is apparent from what has been said under this head that the seventh defense cannot be struck out as frivolous.

The "eighth defense" is abandoned by the defendant and will, therefore, be stricken out for that reason.

Turning now to the body of the answer which consists entirely of admissions and denials of the allegations of the complaint, we find that the motion is to strike it out in its entirety as sham or frivolous. It follows, therefore, that if any of the denials is supported by affidavits and raises a good defense, the whole of this part of the answer must stand. Such a situation arises from the denial of the allegations set up in the sixth paragraph of the body of the answer to the effect that the truck in question was sold at public auction on June 21st, 1929, after due and timely notice to the defendant in accordance with the "Conditional Sales act," &c.

Defendant's affidavits raise a serious question as to whether the sale was actually held on June 21st, 1929, and, of course, if it was not, this fact would constitute a good defense to this action. It follows, therefore, that the entire body of the answer cannot be stricken out as either sham or frivolous.

We now come to the counter-claim which is expressed very briefly as follows:

"By way of counter-claim, the defendant says: It repeats the allegations from the first to the seventh defense of the answer inclusive. By reason thereof, the said defendant has suffered actual damages in the sum of $3,000, which he now counter-claims."

Since the first, third, fourth and fifth defenses have been stricken out and cannot, for that reason, be incorporated in the counter-claim, it remains to be seen whether the second, sixth and seventh defenses set up matter properly available by way of counter-claim, under the Practice act of 1912. *Pamph. L.* 1912, *p.* 370. The defendant seeks to recover damages under the counter-claim against the plaintiff as assignee of the conditional sale contract. The second and sixth defenses as will be seen above merely set up matters of defense, by way of excusing performance on the part of the defendant of his contract of guaranty, and would not give a cause of action to the defendant as a guarantor of performance of the conditional sale contract. The seventh defense, as above observed, if true, merely gives the defendant the right to a credit as against the plaintiff's claim, and is, therefore, in the nature

of a plea of payment *pro tanto*. It would not, for that reason, give defendant the right to an affirmative judgment against the plaintiff. In fact this pleading merely asks that the sum of $1,400 be credited in reduction or extinguishment of the plaintiff's claim.

The counter-claim does not, therefore, set forth a good cross-action against the plaintiff and will be stricken out as frivolous.

The result reached is that the first defense, paragraph or subdivision (d) of the second defense, the third, fourth, fifth and eighth defenses and the counter-claim will be stricken out for the reasons hereinbefore stated, but the remainder of the answer will stand, and no costs will be allowed on this motion.

In view of what has been said, however, regarding the third defense, if the defendant contends that there has been the breach of a warranty made by the plaintiff to the defendant whereby he has been damaged, he may have leave to file an amended counter-claim within ten days from April 25th properly setting forth his claim in this regard.